**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MARINA LOPEZ,

                        Plaintiff,

           - against -

CARMELA MELUZIO, et al.,

                       Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 05-0009 (SJF) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

      Plaintiff Marina Lopez ("Lopez") brought this action against Defendants Carmela Pinello (who is named in the complaint, apparently incorrectly, as "Carmela Meluzio") ("Pinello") and Nick Meluzio ("Meluzio") alleging violations of the Fair Labor Standards Act and the New York Labor Law in connection with her work in their home. Docket Entry ("DE") 1. An organization that calls itself Domestic Workers United ("DWU") has organized protest demonstrations in support of Lopez at businesses that are associated with the defendants but that are not themselves parties to this action. The defendants request an injunction to put an end to such protests, which they assert are injuring their businesses and reputations. I held an evidentiary hearing on the matter and now recommend that the court deny the application for injunctive relief on the grounds that there is insufficient reason to believe that the plaintiff is responsible for the protests and that the court has no jurisdiction over the actions of third party DWU.

I.     Report

      In a letter dated November 22, 2005, the defendants complained that DWU had organized demonstrations in front of Carmela Fast Scissors (defendant Pinello's hair salon) and Da Martino Ristorante Italiano (where Pinello works). DE 36. The defendants provided copies of fliers that

were distributed at each protest and asserted that the actions harmed their reputations and caused their businesses to lose customers. *Id*. They further asserted that Lopez organized the protests and therefore asked for an injunction barring "the plaintiff, her attorneys and any organization affiliated with the plaintiff" from further protests in front of the defendants' homes or businesses." *Id*. By letter dated November 28, 2005 Lopez disputes Meluzio's allegations stating that "Ms. Lopez was not present at nor did she plan or organize any of the events that Defendant describes." DE 37.

I addressed the application at a discovery conference on November 30, 2005, at which a number of other matters were also discussed. DE 39. Although the application for injunctive relief was made in a letter addressed to me, in light of the limitations on my authority pursuant to 28 U.S.C. § 636, I deemed the application to be a request that I make a report and recommendation urging the assigned district court judge to grant injunctive relief. Further, to avoid needless litigation, I held the motion in abeyance to allow plaintiff's counsel time to consult with representatives of DWU to determine whether DWU would voluntarily stipulate to cease its demonstrations against the Meluzio's pending the outcome of the instant litigation, thereby mooting Meluzio's application for injunctive relief. I advised counsel that should DWU not so stipulate, I would schedule an "evidentiary hearing to determine Ms. Lopez's role, if any, in causing the demonstrations to take place and to assess the potential risk to the impartiality of potential jurors in this case." *Id*.

In a letter dated December 7, 2005, Lopez' counsel reported that he had been advised by DWU that it was "unsure" whether it would stage any further protests in front of the defendants' businesses. DE 41. DWU's asserted lack of certainty is at best surprising, as is the report to that

effect by plaintiff's counsel – as it happens, DWU had already staged another such protest the day before (December 6, 2005), and the defendants' counsel had brought that fact to the attention of Lopez' attorneys. DE 42 & Ex. A.

Regardless of whether Lopez' counsel and DWU were acting in good faith in claiming not to know what the future might hold, it was clear that the matter was not moot. I therefore convened an evidentiary hearing on December 13, 2005. DE 44. The defendants called Lopez and Pinello as witnesses and introduced as exhibits fliers that Pinello identified as having been distributed during the demonstrations (copies of which are already in the record as Exhibits A and C, respectively, to DE 36). Lopez called no witnesses. At the conclusion of the evidentiary presentation, I heard the arguments of counsel.

The defendants established that DWU was conducting demonstrations, and that those demonstrations are potentially harmful to the defendants and their non-party businesses, but did not meet their burden of establishing that the plaintiff is responsible for them, or indeed that she played any role in planning or participating in the protests. Lopez testified that long before she filed the instant lawsuit, she spoke with members of DWU to seek their help, and that the organization helped her find counsel to represent her in this case. In telling her story to DWU at that time, she identified the defendants businesses. Lopez also stated that she is a "member" of DWU, but it is unclear that such membership entails specific rights or responsibilities. Lopez has occasionally attended the organizations monthly meetings, but she signed no membership agreement and pays no dues. She has gone to locations with the group – not described with particularity at the hearing, though Lopez stated that they were not businesses – and has joined

them in handing out fliers, however Lopez also testified that she never saw either the specific fliers that were received in evidence or anything similar.

Lopez also denied any role in the demonstrations at the defendants' businesses. She testified that she became aware that DWU members had gone to the hair salon only after the fact and denied knowledge of what occurred there; and while she acknowledged having been told in advance that DWU members were planning to go to the restaurant, she denied having any knowledge of their reason for going or what they planned to do there. When asked why she had not questioned the DWU member who told her about the plan to go to the restaurant more closely about the purpose of the visit, Lopez responded that she had not been interested.

Pinello's testimony did not disagree with any part of Lopez' testimony. She described the events that she observed – or to some extent heard about from others – at the various demonstrations, but had offered no information about the planning of those protests or Lopez' role, if any, therein. At the first incident at the salon, Pinello testified among other things that a number of protesters handed out fliers and blocked the entrance to the business. Pinello called the police, who asked the protesters to move away. The protesters complied and moved to a nearby street corner, where they remained for some time. Pinello described a similar demonstration at the restaurant, but testified that the police were not called. Pinello asserted that both the salon and the restaurant lost customers as a result of the demonstrations.

The defendants' counsel argued that I should reject the veracity of Lopez' testimony and therefore find that the defendants have proved that Lopez is responsible for the protests. Although my ability to judge Lopez' demeanor is limited to some extent by the fact that she testified through an interpreter, and although Lopez plainly has an interest in this matter, I cannot

agree with counsel's position. I did not find Lopez' testimony wholly incredible. In particular I credit her denial of involvement in planning the protests, at least in the absence of any evidence to the contrary – evidence that the defendants were certainly in a position to elicit by subpoenaing witnesses and records from DWU if it existed.

Lopez' testimony therefore does not suffice to establish that Lopez is responsible for the protests. Pinello's testimony, which I take at face value and find to have been credible, does nothing to help a fact-finder determine whether the plaintiff had any involvement in the protests. I therefore see no basis on which to recommend ordering any injunctive relief.

Even viewing the protests as being entirely independent action by a non-party, the court would arguably have jurisdiction under the All Writs Act to enjoin them if their continuation would impair the court's ability to select a fair and impartial jury at the trial of this case. But the record demonstrates that the demonstrations have been of limited duration and very localized. As a result, the likely effect of the protests on potential jurors is minimal and can adequately be addressed in *voir dire*; there is no compelling need to enjoin the speech or conduct of non-parties. In addition, the defendants retain their option to seek relief directly against DWU in another forum to the extent they believe state law provides a basis for doing so, and I offer no opinion as to whether DWU's conduct to date would warrant such relief. In short, without in any way endorsing DWU's conduct, I conclude, on the basis of the current record, that its propriety is not a matter properly before this court.

II.     Recommendation

For the reasons set forth above, I respectfully recommend that the defendants' application for an injunction be denied.

III.     Objections

This Report and Recommendation will be electronically filed on the court's ECF system. Any objection to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to me within 10 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated:  Central Islip, New York
        December 14, 2005

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge