UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARINA LOPEZ SANTIAGO,

        Plaintiff,

        - against -

CARMELA PINELLO, A.K.A. CARMELA
MELUZIO, and NICK MELUZIO

        Defendants.
-----------------------------------------------------------X

05 CV 0009 (KAM) (AKT)
**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE**

## PRELIMINARY STATEMENT

Plaintiff Marina Lopez by this motion seeks determinations from this Court concerning the admissibility of various lines of inquiry and items of evidence produced by Defendants and other witnesses in the course of discovery.  Inquiry into these subjects was pursued at various points by Defense counsel, who has indicated an unwillingness to stipulate to their inadmissibility.  The evidence in question concerns the issue of whether Defendant Carmela Pinello explicitly told Plaintiff to perform certain tasks; allegations of various episodes of job misconduct by Plaintiff; and insinuations by Defendants as to the sexual activity of Plaintiff leading to unsanitary conditions in the basement hallway where Defendant required Plaintiff to live during most of her employment.  Very little, if any, of this evidence is relevant to facts at issue in the case; its production seems calculated to sway the jury through improper suggestion of either justifications for Defendants' actions without basis in law or with lurid testimony introduced for shock value.  Plaintiff seeks a ruling from this Court that such evidence is irrelevant and unfairly prejudicial within the meaning of FED. R. EVID. 402 and 403.

1

# ARGUMENT

## I. Plaintiff Moves to Exclude Inquiry Into Whether Plaintiff's Work was Required by Defendant Pinello

Plaintiff seeks to exclude inquiry or evidence into the claim that work performed by Plaintiff was done "on her own," i.e., without the consent or instruction of Defendant. It is argued herein that such evidence would mislead the jury and confuse the issues at trial. It should therefore be excluded under FED. R. EVID. 403.

Throughout this action, Defendant Carmela Pinello has argued implicitly and explicitly that she never asked Plaintiff to perform portions of the work that she performed in Defendant's home. This claim was first implied by the plea of waiver and estoppel as an affirmative defense in the Answer. In her deposition, Defendant Pinello repeatedly claimed that Ms. Lopez's job consisted only of caring for Defendant's son Vinny. (Carmela Pinello Dep., Pl.'s Ex. A at 177:12–179:4.) She stated at one point, when asked if Ms. Lopez performed any other job duties, "if she did anything else, she did it on her own." (Pl.'s Ex. A at 167:16.) This theme arose again in Defendant's recent motion for summary judgment, which devoted an entire section to arguing that "Plaintiff was hired for the sole reason of providing companionship services to defendant's disabled son," while ignoring the housework she actually performed. (Defs.' Mem. Supp. Summ. J. 14–15.) Finally, the defense of waiver and estoppel, though apparently dropped as to Plaintiff's federal claims under the Fair Labor Standards Act ("F.L.S.A."), is still asserted as to her state law claims in the Pretrial Order. (Proposed Joint Pretrial Order at 5.) It seems clear that Defendant Pinello will weave this defense and factual narrative into her testimony at trial.

### A. Irrelevance of the Inquiry.

All evidence that is not relevant must be excluded. FED. R. EVID. 402. While the Rules prefer the admissibility of evidence, the evidence must not only possess some probative value to the fact to be proved, but that fact must also have consequential bearing on the determination of an issue in the particular case. *See* FED. R. EVID. 401; *Conway v. Icahn & Co., Inc.*, 16 F.3d 504 (2d Cir. 1994).

Testimony on the subject of whether Defendant requested certain work is irrelevant and would mislead the jury, as it does not establish any legally relevant fact. The plain language of the FLSA and New York Labor Law ("NYLL"), and the interpretation of that language by the courts, makes clear that an employer is liable for all work performed by an employee, regardless of whether that work was explicitly requested. The FLSA defines the term "employ" to include "suffer or permit to work." 29 U.S.C. § 203(g). The NYLL similarly defines "employee" as one who is "employed or permitted to work" in an occupation. N.Y. Lab. Law § 651(5). The Supreme Court has taken note of the "striking breadth" of this definition (*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)), stating, "[a] broader or more comprehensive coverage of employees… would be difficult to frame." *U.S. v. Rosenwasser*, 323 U.S. 360, 362 (1945). Department of Labor ("DOL") regulations have applied sharper focus to the specific meaning of this language. They state:

> Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time.

29 C.F.R. § 785.11.  Further regulations emphasize even more strongly the duty an employer has to prevent unwanted work from being performed, stating that an employer "cannot sit back and accept… benefits without compensating for them." 29 C.F.R. § 785.13.  The clear intent of these provisions is to prevent employers from evading the requirements of the Act through a claim that work was not ordered, when the employer continues to enjoy the fruits of that labor.

 Defenses based on an employer's ignorance of work performed are exceedingly narrow, and there is no basis to claim such a defense on the facts of this case.  Presenting evidence to this effect would confuse the real issues at trial and mislead the jury.  In keeping with the plain language of the regulations above, courts have held that the requirement of employer knowledge may include constructive knowledge, and that requirement is satisfied when the employer "has reason to know" that overtime work is being performed.  *Holzapfel v. Town of Newburgh, NY*, 145 F.3d 516, 524 (2d Cir. 1998), *cert. denied*, 525 U.S. 1055; 29 C.F.R. § 785.12.

 It is difficult to imagine a set of circumstances in which an employer could be unaware of work performed in her own household.  There has been no allegation that Plaintiff actively concealed work that she performed.  Here, all of Plaintiff's alleged job duties included either care for Vincent Pinello or housework for the Defendant and her family.  Defendant claims that she herself cared for Vinny on Ms. Lopez's days off, and even for substantial portions of Plaintiff's working hours. (Pl.'s Ex. A at 106:22–107:4.)  Thus, she had reason to know of the amount of work required to care for her son.  As for housework, given that Defendant claims to have spent significant portions of her own non-work time at home, she should have been aware of work done to keep her household clean.  In fact, Defendant claimed in her deposition that "if you come to my house, you could eat off my floor..." (Pl.'s Ex. A at 149:12.)  In the event that the jury finds that Plaintiff was the one responsible for maintaining this level of cleanliness, it

strains credulity to assert that Defendant did not know her house was being cleaned, as she clearly enjoyed the result. These facts present a clear basis to impute constructive knowledge to the Defendant of all work performed in her own household. This leaves the claim "anything else, she did on her own" without legal effect. Even if it were true that Defendant did not request or expect work that Ms. Lopez performed (a fact that Ms. Lopez's testimony will dispute), this would be no defense to a claim for unpaid wages for that work.

### B.  Testimony Regarding "Unrequired" Work Would Mislead the Jury

This Court should therefore issue an order before trial excluding attempts by Defendant or her counsel to create the impression that Plaintiff's work was unrequested or unwanted. The jury should not be led to believe that such facts give rise to a legitimate defense at law. Even if such facts could be established, they would make no difference in the outcome of this case, and their presentation would therefore waste the time of this Court and the jury.

### II.  Plaintiff Moves to Exclude Evidence of Job Misconduct

Plaintiff respectfully requests this Court to exclude evidence concerning Defendant's allegations that Plaintiff engaged in misconduct on various occasions during her employment. The evidence is not relevant to Plaintiff's claim for unpaid wages under the FLSA and NYLL, and even if it were, it should be excluded on the grounds that the danger of unfair prejudice, confusion of the issues, and misleading the jury all substantially outweigh its limited probative value.

Defendant has referred to at least two kinds of alleged misconduct during discovery and Plaintiff expects that she will raise these allegations (and possibly new allegations) at trial. The misconduct previously alleged by Defendant includes the claims that (1) Plaintiff returned from her day off to Defendant's residence in an intoxicated state (Pl.'s Ex. A at 196:4–10, 202:19–

5

203:6, 276:7–15) and (2) Plaintiff gave alcohol to Defendant's disabled son, Vinny Pinello (Pl.'s Ex. A at 258:8–261:2; Vinny Pinello Dep., Pl.'s Ex. B at 16:3–18:12, 146:15–156:2). These allegations, generally unsolicited, were repeatedly mentioned in the deposition testimonies of Defendants Carmela Pinello and Nick Meluzio and Vinny Pinello. (Pl.'s Ex. A at 196:4–10, 202:19–203:6, 276:7–15; Pl.'s Ex. B at 16:3–18:12, 146:15–156:2; Nick Meluzio Dep., Pl.'s Ex. C at 65:17–24.) The fact that Defendant has refused to agree to stipulations excluding evidence concerning this alleged misconduct suggests that she intends to rely upon and pursue this "theory" as a part of her defense. It remains unclear whether Defendant will raise other such allegations at trial in support of their case.

### A. Allegations of Misconduct are Irrelevant

Under the FLSA, coverage under wage and hour laws is broad; protection attaches as soon as there is a showing of an employer-employee relationship and that the employee is "engaged in commerce" or is employed by "an enterprise engaged in commerce."[1] 29 U.S.C. §206; *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947). Nothing in the language of the statute makes payment of minimum wages contingent on the quality of the work performed by the employee or whether the employee engaged in conduct disapproved by the employer. *See* 29 U.S.C. §§ 203, 206. Wages must be paid "free and clear." 29 C.F.R. § 531.35. That conduct on the job, such as misconduct, inefficiency, or unsatisfactory performance, is irrelevant to the payment of minimum wage is supported by the fact that the employer is not permitted to recover financial losses resulting from such conduct through deductions in wages. *See Brennan v. Veterans Cleaning Serv.*, 482 F.2d 1362, 1369–70 (5th Cir. 1973) (prohibiting deduction of wages where employee allegedly destroyed work vehicle while driving it in an intoxicated state);

---

[1] "Employment of persons in domestic service in households" declared covered under the FLSA 29 U.S.C. §202(a).

6

*Donovan v. Pointon*, 717 F.2d 1320, 26 (10th Cir. 1983) (denying employer setoff claims for wage advances given to employees as well as for costs associated with acts of sabotage committed by employees); *Wirtz v. McGhee*, 244 F. Supp. 412, 415 (E.D.S.C. 1965) ("Once an employee is covered by the Act, he must be paid wages commensurate with the Act for all compensable working time, and the quality of his work cannot be used as means to defeat the purposes of the Act.") (*citing Portland Terminal Co.*).  Thus, under federal wage and hour law, allegations of misconduct, inefficiency, or unsatisfactory performance on the part of employees are not relevant to determinations of liability of employers for unpaid wages.

The NYLL is similar to the FLSA with respect to this issue.  *See* N.Y. Lab. Law § 193; *see also Guepet v. Int'l Tao Sys., Inc.*, 443 N.Y.S. 2d 321, 322 (N.Y. Sup. Ct. 1981) (prohibiting deductions because employee did not perform work properly—employer's remedy for poor quality of work is termination) (*cited with approval by Rivers v. Butterhill Realty*, 534 N.Y.S. 2d 834 (3d Dep't 1988)); *Maggione v. Bero Construction Corp.*, 431 N.Y.S. 2d 943 (N.Y. Sup. Ct. 1980) (prohibiting deductions from employees' wages for money allegedly owed to employer and acts of sabotage allegedly committed by employees).  As under federal law, state wage and hour law renders irrelevant a consideration of an employee's job performance in the determination of unpaid wages.

Here, it is undisputed that there was an employment relationship between Plaintiff and Defendant under the FLSA and NYLL  Plaintiff's employment consisted of providing domestic services in Defendant's home.  Her claims relate to violations of wage and hour provisions under federal and state law.  She has not, at any point, put at issue the termination of her employment—for example, through a claim of wrongful discharge, which could arguably make misconduct relevant.  All that is at issue is whether Defendant failed to comply with wage and

7

hour laws and if so, how much Plaintiff is owed in damages. Defendant's allegations of misconduct, even if true, have no bearing on whether Plaintiff was paid lawful wages nor do they determine the number of hours worked by Plaintiff. Moreover, some of Defendant's accusations concern Plaintiff's conduct outside of work hours, which are especially irrelevant. (Pl.'s Ex. A at 196:4–7.) If Defendant was not satisfied with Plaintiff as an employee, she was free to terminate that relationship at any time, which she eventually did. Employment-at-will was her remedy, not a reduction or denial of wages that would violate the statutory minimum.

To the extent to which it is unclear how Defendant intends to use these allegations of misconduct at trial, the evidence becomes yet more clearly irrelevant. Plaintiff's alleged misconduct during her employment with Defendant has, again, no probative value or bearing on whether Defendant paid the requisite wages and whether Plaintiff actually worked the hours to which she will testify at trial. Therefore, Defendant's allegations of misconduct are irrelevant and should be excluded pursuant to Fed. R. Evid. 402.

### B. Evidence of Misconduct is Unfairly Prejudicial

Further, a court may exclude evidence, even though relevant, if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; *Old Chief v. United States*, 519 U.S. 172 (1997). Probative value is not absolute, and if evidence is not particularly pertinent to any issues in the litigation, it will likely be excluded on grounds of prejudice, confusion of the issues, and misleading the jury. *Berkovich v. Hicks*, 922 F.2d 1018, 1024 (2d Cir. 1991). Unfair prejudice is defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Comm. Notes, Fed. R. Evid. 403.

8

Here, the probative value, if any, of Defendant's evidence regarding Plaintiff's alleged misconduct is slight at best, as it does not go to any disputed issue at trial. If the evidence is believed or even considered by the jury, however, they may improperly infer from this evidence that Plaintiff is not entitled recover under the FLSA and/or NYLL simply because she may have engaged in misconduct on the job. In particular, a jury may be emotionally swayed by Defendant's allegation regarding Plaintiff's treatment of her disabled teenage son. The jury will be hard-pressed to award compensation to a plaintiff it deems undeserving, even though such considerations are prohibited in determining liability for unpaid wages under the FLSA and NYLL. The jury will give undue weight to testimony which portrays Plaintiff as a "bad employee," instead of focusing on whether she in fact performed the work for the hours she will testify to at trial.

Accordingly, it is respectfully requested that this Court exclude Defendant's specific allegations regarding Plaintiff's misconduct on grounds that they are irrelevant to the issues to be tried and will lead to unfair prejudice, confusion, and mislead the jury. Further, it is requested that this Court exclude all testimony and production of evidence with regard to any employee misconduct on the grounds that such lines of inquiry are irrelevant under the statutory provisions at issue in this case.

### III. Plaintiff Moves to Exclude Inquiry or Evidence as to the Cause of the Flooding in College Point

Plaintiff also seeks to exclude inquiry or evidence into the allegation that Plaintiff caused the bathroom in the basement of Defendant's College Point home to flood by flushing condoms down the toilet. It is argued herein that such evidence is inadmissible under FED. R. EVID. 701 and 802, irrelevant under FED. R. EVID. 402, and unduly prejudicial within the meaning of FED. R. EVID. 403, and should be excluded on these grounds.

It is undisputed that throughout most of her employment, Plaintiff slept in the basement of Defendant Carmela Pinello's College Point residence, just down the hallway from Defendant's teenage daughters, Rose and Violet. (Proposed Joint Pretrial Order, Stipulations of Fact, ¶ 25.) It is also undisputed that a bathroom near this sleeping area flooded on occasion. (Defendant's Response to Plaintiff's Request for Admission, ¶ 116.) When this occurred, former Defendant Nick Meluzio, Defendant Pinello's brother, was called to help fix the problem. (Pl.'s Ex. C at 58:16–59:14.) In his deposition, Mr. Meluzio claimed that he believed the flooding to have been caused by Plaintiff flushing condoms down the toilet after a visit from an individual claimed by Mr. Meluzio to be her boyfriend. (Pl's Ex. C at 64:6–21.) Although Plaintiff is not pressing the claims against Mr. Meluzio at trial, and although he has not been named as a witness (*See* Proposed Joint Pretrial Order), the presence of this testimony in the record indicates the possibility that the allegation could be repeated by other members of the Defendant's family, many of whom are expected to testify at the trial. *Id.* Furthermore, when stipulation to the inadmissibility of this allegation was proposed to Defendant Carmela Pinello, she refused to so stipulate, suggesting that she may attempt to introduce the evidence at trial. Notwithstanding the hearsay nature of such evidence and its irrelevance to the issues, the danger of the jury hearing prejudicial evidence before it is identified as inadmissible justifies a ruling before trial.

### A. Lack of Knowledge and Hearsay

In his deposition, Nick Meluzio stated several times that Ms. Lopez flushed condoms down the toilet, and that this caused the basement to flood. (Pl.'s Ex. C at 64:6–21,105:22–107:10.) He claimed to know this because he was called to clean out the toilet on these occasions. (Pl.'s Ex. C at 58:16–59:14.) However, upon further questioning, he admitted never having seen Ms. Lopez actually doing this. (Pl.'s Ex. C at 106:22). Thus, in the event that Mr.

Meluzio is added to the Pretrial Order as a witness, his testimony to this effect will be based on inference, not personal knowledge.  It is therefore inadmissible as the opinion of a lay witness.  FED. R. EVID. 701.

Mr. Meluzio stated that after this litigation had commenced, he related his theory about the condoms to Carmela Pinello, stating that she didn't know what had caused the flooding.  (Pl.'s Ex. C at 94:12–19).  Ms. Pinello has also not been called as a witness (*See* Proposed Joint Pretrial Order).  However, in the event that she is called and that she or any other witness testifies to such a conversation, it will be hearsay.  FED. R. EVID. 802.

The basis of this evidence is shaky at best.  It would likely be inadmissible at trial.  However, to establish its inadmissibility through cross examination would still put the testimony before the jury, giving rise to the danger of unfair prejudice.  It is therefore appropriate to weigh the prejudicial character of the testimony against its relevance.

### B.  The Allegations are Irrelevant

The allegation that the flooding in the College Point basement was caused by Plaintiff flushing condoms down the toilet, even if true, would be at best marginally relevant to the issue of whether Defendants are entitled to a credit for providing Plaintiff with lodging.  29 U.S.C. § 203(m).  Plaintiff asserts two arguments why this offset should be denied.  First, that the lodging was primarily provided for the benefit of the employer, so that she might have access to Ms. Lopez's services at all times.  *See Soler v. G. & U., Inc.*, 833 F. 2d 1104, 1109–10 (2d Cir. 1987), *cert. denied*, 488 U.S. 832 (1988) (lodging credit may be denied where it is provided for employer's benefit).  Second, Plaintiff contends that a credit should be denied because the lodging violated state and local housing laws.  *See* 29 C.F.R. § 531.31.

The fact that the basement was flooded at all is relevant to the issue of who derived the primary benefit of the lodging insofar as it tends to rebut Plaintiff's claim that Ms. Lopez chose to live in her household, rather than being required to do so. (Pl.'s Ex. A at 210:7–8). However, the cause of the flooding has no bearing on this issue. The cause of flooding could potentially have some relevance to establishing the conditions in the Pinello household—however, the cellar lodging appears to violate a number of New York City housing code provisions independent of the presence of raw sewage on the floor.

The New York City Health Code provides that, except under circumstances not present here, "no owner, agent, lessee, superintendent or janitor of any building shall permit any person to occupy a cellar as defined in the Multiple Dwelling Law § 4 (37) for living purposes, unless a permit has been issued…" 24 Rules & Regs. City of N.Y. Hlth. Code § 131.07. A search of the Dept. of Buildings website reveals no such permit. *See* N.Y.C. Dept. of Bldgs. website at http://www.nyc.gov/html/dob/html/bis/bis.shtml (under "Borough" enter "Queens," for "House #" 1218, for "Street Name" 121 St.). The New York City housing code contains similar provisions: "No room in the cellar of a one- or two-family dwelling shall be rented and no member of the family or families occupying the dwelling shall use such room for sleeping, eating or cooking purposes." N.Y.C. Code § 27-2087. The housing code additionally prohibits bathrooms such as the one in the Pinello residence: "Water closets are prohibited in a cellar or basement, unless they are either provided for lawful cellar and basement dwelling units, or are supplementary to water closets required under the provisions of this article." N.Y.C. Code § 27-2063. Finally, the code requires that cellar dwelling units must be properly ventilated. N.Y.C. Code § 27-2081(a).

None of these provisions place any burden on the occupant of the living spaces in question. All of them are directed to the individuals responsible for maintaining the building. There is therefore no need to introduce allegations that Plaintiff bore any responsibility for the conditions in the Pinello household.

### C.  The Evidence is Prejudicial

The insinuation that Plaintiff caused the flooding as an incident of a sexual relationship is clearly prejudicial within the meaning of FED. R. EVID. 403. It would raise an issue with no relevance to the case for the sole purpose of parading offensive and unduly suggestive matter before the jury. As with evidence of misconduct, it would suggest to the jury that Plaintiff is undeserving of compensation because of factors that have no place in a lawsuit for unpaid wages and overtime. It would open the door to any prejudices the jury may hold about sexual conduct, and invite judgments about the propriety of alleged sexual behavior, all in a context where such issues have no bearing on the hours worked by Plaintiff, the compensation she is owed, or any other fact of consequence. Under the balancing test called for by FED. R. EVID. 403, this prejudicial effect clearly outweighs the minimal to nonexistent relevance of the allegation. It should therefore be excluded.

### **CONCLUSION**

Plaintiff respectfully requests that the Court exclude inquiry into or evidence concerning Defendant's allegations that work performed by Plaintiff was done without Defendant's consent or instruction; allegations of Plaintiff's misconduct; and allegations that Plaintiff caused the flooding in the basement of Defendant's College Point residence. These allegations have minimal, if any, probative value to the issues at trial. Thus, their only effect will be to mislead or shock the jury. That these allegations are untrue do not ameliorate the impact; all that is needed

is for the jury to hear and consider such evidence in deciding this case. The Court should accordingly grant Plaintiff's Motion and exclude inquiry into and evidence regarding these matters.


Dated: Flushing, New York
       January 5, 2009

                                        /s/_____
                                        Sameer M. Ashar, Esq. (SA9380)
                                        Hye Won Chung, Legal Intern
                                        Michael Scimone, Legal Intern
                                        Mia Unger, Legal Intern
                                        Main Street Legal Services, Inc.
                                        City University of New York School of Law
                                        65–21 Main St.
                                        Flushing, N.Y. 11367
                                        (718) 340-4180
                                        Attorney for Plaintiff


To:    Mark L. Hankin, Esq.
         Hankin & Mazel, PLLC
         7 Penn Plaza, Suite 904
         New York, N.Y. 10001
         (212) 349-1668
         Attorney for Defendants